**EXHIBIT B**

ULSTER COUNTY CLERK'S OFFICE
COUNTY CLERK'S RECORDING PAGE

M 4135-



RECEIVED
MAY 2 5 2000
218
QUARTARARO & QUARTARARO

Return To:

    QUARTARARO & QUARTARARO
    9 CANNON STREET
    PO BOX 750
    POUGHKEEPSIE NY  12606-0750

Index   Deed Book

Book    03039    Page    0293

No. Pages    0010

Instrument   CONSOLIDAT AGMT

Date :    5/12/2000

Time :    10:20:39

Control #   200005120026

RPT

HUDSON VALLEY FEDERAL C U

GAROFOLO
BARBARA A & OR

Employee ID    MDAV

| | | |
|---|---|---|
| MISC REC | $ | 35.50 |
| | $ | .00 |
| | $ | .00 |
| GOV REC FE | $ | 5.00 |
| | $ | .00 |
| | $ | .00 |
| | $ | .00 |
| | $ | .00 |
| | $ | .00 |
| Total: | $ | 40.50 |

STATE OF NEW YORK
ULSTER COUNTY CLERK'S OFFICE

WARNING - THIS SHEET CONSTITUTES THE CLERK'S
ENDORSEMENT REQUIRED BY SECTION 316-a(5) &
SECTION 319 OF THE REAL PROPERTY LAW OF THE
STATE OF NEW YORK. DO NOT DETACH.

    ALBERT SPADA
    COUNTY CLERK

TRANSFER AMT

TRANSFER AMT $          .00

TRANSFER TAX $          .00

LIBER 3039 PAGE 0294



Record & Return To:
Quartararo & Quartararo
Attorneys At Law
9 Cannon Street
P.O. Box 750
Poughkeepsie, NY 12606-0750

_____[Space Above This Line For Recording Data]____ Title Resource Agy

# CONSOLIDATION, EXTENSION AND MODIFICATION AGREEMENT

## WORDS USED OFTEN IN THIS DOCUMENT

(A) "Agreement." This document, which is dated April 28th, 2000, and exhibits and riders attached to this document will be called the "Agreement."

(B) "Borrower." Barbara Ann Garofolo & Jeffrey Charles Burfeindt will be called "Borrower" and sometimes "I" or "me." Borrower's address is 80 Pancake Hollow Road, Highland, NY 12528.

(C) "Lender." Hudson Valley Federal Credit Union will be called "Lender" and sometimes "Note Holder." Lender is a corporation or association which exists under the laws of New York. Lender's Address is 159 Barnegat Road, Poughkeepsie, NY 12601.

(D) "Mortgages." The mortgages, deeds of trust or other security instruments identified below and any additional security instruments and related agreements.".

(1) The Mortgage given by Barbara Ann Garofolo & Jeffrey Charles Burfeindt and dated June 29th, 1999 in favor of Hudson Valley Federal Credit Union securing the original principal amount of U.S. $200,000.00. This Mortgage is on a Fannie Mae/Freddie Mac Security Instrument and was recorded on July 14, 1999, in the Office of Ulster County Clerk, State of New York at Liber 4135 at page 160.

(2) The Modification Agreement given by Barbara Ann Garofolo & Jeffrey Charles Burfeindt and dated January 31, 2000 in favor of Hudson Valley Federal Credit Union securing the original principal amount of U.S. $200,000.00. This Modification Agreement was recorded on February 10, 2000, in the Office of the Ulster County Clerk, State of New York at Liber 3013 at page 0031 .

(3) The Modification Agreement given by Barbara Ann Garofolo & Jeffrey Charles Burfeindt and dated April 28, 2000 in favor of Hudson Valley Federal Credit Union securing the original principal amount of U.S. $ 200,000.00. This Modification Agreement will be recorded simultaneously herewith in the Office of the Ulster County Clerk, State of New York at Liber at page .

Fannie Mae/Freddie Mac CONSOLIDATION, EXTENSION AND MODIFICATION AGREEMENT - Single Family      Form 3172 7/86

Agreement and who is entit[led] to receive the payments I agree to ma[ke] under this Agreement may be called the "Note Holder."

(F) "Notes." The Notes identified below and any additional Notes and related obligations identified in Exhibit A to this Agreement will be called the "Notes";

(1) The Note secured by the Mortgage identified in Section (D)(1) above and dated June 29th, 2000.

(2) The Note secured by the Mortgage identified in Section (D)(2) above and dated January 31st, 2000.

(3) The Note secured by the Mortgage identified in Section (D)(3) above and dated April 28, 2000.

(G) "Property." The property which is described in the Mortgage(s) and in Exhibit B to this Agreement, will be called the "Property." [Strike italics is not applicable.] The property is located at 80 Pancake Hollow Road, Lloyd, NY 12528.

I promise and I agree with Lender as follows:

I. BORROWER'S AGREEMENT ABOUT OBLIGATIONS UNDER THE NOTES AND MORTGAGES
I agree to take over all of the obligations under the Notes and Mortgages as consolidated and modified by this Agreement as Borrower. This means that I will keep all of the promises and agreements made in the Notes and Mortgages even if some other person made those promises and agreements before me. The total unpaid principal balance of the Notes is U.S. $200,000.00. Of this amount, U.S. $100,000.00 was advanced to me (or for my account) immediately prior to this consolidation.

II. AGREEMENT TO COMBINE NOTES AND MORTGAGES
By signing this Agreement, Lender and I are combining into one set of rights and obligations all of the promises and agreements stated in the Notes and Mortgages including any earlier agreements which combined or extended rights and obligations under any of the Notes and Mortgages. This means that all of Lender's rights in the Property are combined so that under the law Lender has one Mortgage and I have one loan obligation which I will pay as provided in this Agreement.

III. THE CONSOLIDATED NOTE AND THE CONSOLIDATED MORTGAGE
This combining of Notes and Mortgages is known as a "consolidation." The Notes together will be called the "Consolidated Note." The Mortgages together will be called the "Consolidated Mortgage." The Consolidated Mortgage secures the Consolidated Note and is a single lien upon the Property. I have no right of set-off or counterclaim or defense to the obligations of the Consolidated Note or the Consolidated Mortgage.

IV. AGREEMENT TO CHANGE TERMS OF THE CONSOLIDATED NOTE
Lender and I agree to change the terms of the Consolidated Note. The new terms are:
1. Borrower's Promise to Pay Principal and Interest
I promise to pay the principal that has not yet been paid under the Consolidated Note, plus interest, to the order of Lender. That principal amount is U.S. $200,000.00. Interest will be charged on unpaid principal as provided in this Agreement beginning on the date of this Agreement until the full amount of principal has been paid.
2. Payments
(A) Time and Place of Payments
I will pay principal and interest by making payments every month.
During the course of construction, "Interest Only" is to be charged on each advance from the date when each advance is made at the initial rate of 8.50% which interest is to be paid monthly beginning one month from the date of the first advance and each and every month thereafter up to and including the date of the final advance, but no later than April 28, 2000. This construction phase interest rate is variable. The Rate Adjustment dates are the first days of the first monthly billing cycle in each calendar quarter. On each Rate Adjustment Date, the Annual

called the "Index". The Index is the average of the 26-week Treasury Rate for the previous calendar quarter plus 3.25% rounded to the nearest 1/4 of 1%. The interest rate will not be changed more than two percent (2%). Thereafter beginning the 1st day of the second month following the date of the last payment of interest only, pursuant to the Building Loan Contract, payments shall be made in accordance with the preprinted terms of this note as follows:

I will make my monthly payments on the first day of each month beginning on June 1,2000. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on May 1, 2030, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

I will make my monthly payments at Hudson Valley Federal Credit Union, 159 Barnegat Road, Poughkeepsie, NY 12601.

  (B) Interest Rate

I will pay interest at a yearly rate of 5.875%. The interest rate required by this Section 2(B) is the rate I will pay both before and after any default described in Section 3(B) of this Consolidated Note. *An Adjustable Rate Rider is recorded with this Agreement as Exhibit C and is a term of this Agreement. The interest rate I will pay will change in accordance with that Rider.* [Strike italics if not applicable.]

  (C) Monthly Payments

Each of my monthly payments will be in the amount of U.S. $1,183.08. *An __ Adjustable Rate or __ Graduated Payment or Rider is recorded with this Agreement as Exhibit C and is a term of this Agreement. My monthly payment amount may change in accordance with that Rider.* [Strike italics if not applicable.]

  3. Borrower's Failure to Pay as Required

   (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 2% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

   (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. I will also be in default if I do not keep my promises and agreements under this Agreement and the Consolidated Mortgage.

   (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

   (D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

   (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

  4. Borrower's Right to Prepay

   (A) Borrower's Right to Make Prepayments

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

   (B) Cancellation of Other Prepayment Terms

Any terms contained in the Consolidated Note about my right to make prepayments which do not agree with this Section 4 are cancelled by this Agreement. My right to make prepayments

LIBER 3039 PAGE 0297

owe under this Note. If I make a partial prepayment, there will be no changes in the due dates or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

    (B)    **Cancellation of Other Prepayment Terms**

Any terms contained in the Consolidated Note about my right to make prepayments which do not agree with this Section 4 are cancelled by this Agreement. My right to make prepayments under the Consolidated Note is governed only by the terms contained in this Section 4.

    5.    **Loan Charges**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Lender may choose to make this refund by reducing the principal I owe under this Consolidated Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

    6.    **Giving of Notices**

Any notice that must be given to me under this Consolidated Note will be given as provided in the Consolidated Mortgage.

    7.    **Waivers**

I and any other person who has obligations under this Consolidated Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

    8.    **Unchanged Terms of Consolidated Note in Full Effect**

All the terms of the Consolidated Note that are not changed in this Agreement remain in full effect as if they were stated in this Agreement.

**V.    AGREEMENT ON TERMS OF THE CONSOLIDATED MORTGAGE**

Lender and I agree to change the terms of the Consolidated Mortgage. The new terms of the Consolidated Mortgage are the security instrument terms that are set out in Exhibit D to this Agreement. However, the terms of the Consolidated Mortgage prior to this change that are not inconsistent with the security instrument terms set out in Exhibit D shall also continue in effect.

**VI.    BORROWER'S INTEREST IN THE PROPERTY**

I promise that I am the lawful owner occupying the Property.

**VII.    WRITTEN TERMINATION OR CHANGE OF THIS AGREEMENT**

This Agreement may not be terminated, changed, or amended except by a written agreement signed by the party whose rights or obligations are being changed by that agreement.

**VIII.    OBLIGATIONS OF BORROWERS AND OF PERSONS TAKING OVER BORROWER'S OR LENDER'S RIGHTS OR OBLIGATIONS**

If more than one person signs this Agreement as Borrower, each of us is fully and personally obligated to keep all of Borrower's promises and obligations contained in this Agreement. The Note Holder may enforce its rights under this Agreement against each of us individually or against all of us together.

Agreement. However, the terms of the Consolidated Mortgage prior to this change that are not inconsistent with the security instrument terms set out in Exhibit D shall also continue in effect.

VI. **BORROWER'S INTEREST IN THE PROPERTY**
I promise that I am the lawful owner occupying the Property.

VII. **WRITTEN TERMINATION OR CHANGE OF THIS AGREEMENT**
This Agreement may not be terminated, changed, or amended except by a written agreement signed by the party whose rights or obligations are being changed by that agreement.

VIII. **OBLIGATIONS OF BORROWERS AND OF PERSONS TAKING OVER BORROWER'S OR LENDER'S RIGHTS OR OBLIGATIONS**
If more than one person signs this Agreement as Borrower, each of us is fully and personally obligated to keep all of Borrower's promises and obligations contained in this Agreement. The Note Holder may enforce its rights under this Agreement against each of us individually or against all of us together.

Lender and I agree that any person who takes over my rights or obligations under this Agreement will have all of my rights and will be obligated to keep all of my promises and agreements made in this Agreement. Similarly, any person who takes over Lender's rights or obligations under this Agreement will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Agreement.

By signing this Agreement, Lender and I agree to all of the above.

_____                          _____
Hudson Valley Federal Credit Union                 Barbara Ann Garofolo          Borrower
              Lender

By: _____                      _____
Darryl A. Mauck, Director of Real Estate           Jeffrey Charles Burfeindt     Borrower

[Space Below This Line for Acknowledgments]

INSTRUCTIONS

The following instructions apply if this Agreement is used in a consolidation, extension or modification of a single-family loan intended for possible sale to Fannie Mae or Freddie Mac

(1) All notes, security instruments, the most recent consolidation agreement and related agreements that modify, consolidate or extend prior underlying obligations and which predate this Agreement must be listed in this Agreement or in an Exhibit to this Agreement.

(2) For sales of whole loans to Fannie Mae and Freddie Mac, the Seller/Lender must deliver the executed original of this Agreement and all exhibits to it (or a certified true copy from the recording clerk, if the original is not yet available), together with each original Note which is the original evidence of any part of Borrower's indebtedness set out in this Agreement.

(3) If new funds are advanced at the time of the consolidation and modification evidenced by this Agreement, the new obligation must be evidenced by a new note and a new mortgage on the current Fannie Mae/Freddie Mac Single Family Uniform Instruments. This new loan will then become a part of the Consolidated Note and the Consolidated Mortgage. It is not necessary that the repayment terms of the new loan, as set out in the new note, reflect the terms of the Consolidated Note; the applicable repayment terms for the total indebtedness are supplied by this Agreement (see Section IV).

(4) The dollar amount entered in the first blank in Section I and the dollar amount entered in the blank in Section IV(1) should be the same. The amount entered in the last blank in Section I should be completed with the dollar amount of the new loan, if any, made in connection with this consolidation.

(5) The repayment terms of the Consolidated Note (e.g. the consolidated principal amount, the monthly principal and interest payment, the interest rate and provisions for any interest rate and monthly payment changes applicable to the consolidated obligation) are restated in this Agreement by completion of the appropriate blanks in Section IV. If the Consolidated Single Family loan has an adjustable interest rate (or other alternative mortgage loan provisions), the appropriate Fannie Mae or Freddie Mac Rider must be attached as Exhibit C to this Agreement and recorded together with it. The terms of the Consolidated Mortgage, as changed by this Agreement, must be the current version of the Uniform and Non-uniform Covenants from the security instrument for the appropriate jurisdiction, together with any applicable riders. These terms are supplied by means of Exhibits C (if any) and D to this Agreement.

LIBER 3033 PAGE 030

State of New York )
)ss.:
County of Dutchess )

On the __28th__ day of __April__ in the year __2000__ before me, the undersigned, a Notary Public in and for said State, personally appeared __Barbara Ann Garofolo Jeffrey Charles Burfeindt__, personally know to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

PAUL M. QUARTARARO
Notary Public, State of New York
Reg. No. 02QU4974654
Qualified in Dutchess County
Commission Expires November 19, 2003

LIBER 3039 PAGE 0301

STATE OF NEW YORK )
) ss.:
COUNTY OF Dutchess )

On the __28th__ day of __April__ in the year __2000__ before me the undersigned, a Notary Public in and for said State, personally appeared:

Darryl A. Mauck

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that be his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

PAUL M QUARTARARO
Notary Public, State of New York
Reg. No 02QU4974654
Qualified in Dutchess County
Commission Expires November 19, 2003

LIBER 3039 PAGE 0302

ALL that certain tract or parcel of land situate in the Town of Loyd and Plattekill, County of Ulster and State of New York bounded and described as follows:

BEGINNING at a point in the northerly line of Crescent Avenue (formerly known as Basket Street), said point being the southeast corner of Lands, now or formerly, of Gruner (Liber 1243 page 171) and the southwest corner of the herein described premises, and running;

THENCE along the easterly line of said Gruner North 01 Degrees 40' 00" East 219.60 feet;

THENCE North 18 Degrees 46' 00" East 404.37 feet to a point in a stone wall marking the southerly line of Lands, now or formerly, of Rozzi (Liber 2030 page 77);

THENCE along said stone wall South 47 Degrees 21' 00" East 357.05 feet to a point in the westerly line of Pancake Hollow Road;

THENCE along the westerly line of Pancake Hollow Road South 24 Degrees 11' 30" West 50.00 feet;

THENCE South 21 Degrees 00' 00" West 240.00 feet;

THENCE South 19 Degrees 00' 00" West 105.00 feet to a point in the northerly line of Crescent Avenue;

THENCE along the same South 62 Degrees 23'00" West 61.81 feet;

THENCE North 79 Degrees 40' 00" West 207.00 feet to the point of beginning.

The real property covered by the mortgage is or will be improved by a one or two family residence or dwelling only.

Subject to covenants, restrictions, rights of way and conditions as set forth therein and of record, if any.

Section: 95.1          Block: 1          Lot: 16

RECORD AND RETURN TO:

Quartararo & Quartarrao
Attorney's At Law
9 Cannon Street, P.O. Box 750
Poughkeepsie, New York 12602-0750